**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| EVOLVED WIRELESS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00033-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO. | § | |
| LTD., SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| *Defendants*. | § | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of Plaintiff Evolved Wireless, LLC ("Plaintiff") (Dkt. No. 66), the response of Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Defendant") (Dkt. No. 68), and the reply of Plaintiff (Dkt. No. 70). The Court held a claim construction hearing on April 12, 2023. Having considered the arguments and evidence presented by the parties at the hearing and in their claim construction briefing, the Court issues this Claim Construction Order.

1

## Table of Contents

I.  BACKGROUND ................................................................................................ 3

II.  LEGAL PRINCIPLES ..................................................................................... 6

III.  CONSTRUCTION OF AGREED TERMS .................................................. 10

IV.  CONSTRUCTION OF DISPUTED TERMS ............................................... 10

   A.  the use of a "preamble" in the random-access procedure ('326 and '679 Patents) ............ 10

   B.  "information related to a preamble for the terminal" ('326 Patent) .................................. 18

V.  CONCLUSION................................................................................................ 24

## I. BACKGROUND

Plaintiff brings suit alleging infringement of U.S. Patent Nos. RE46,679 (the "'679 Patent") and RE48,326 (the "'326 Patent") (together, the "Asserted Patents"). The Asserted Patents are part of the same patent family, share the same specification, and claim priority to a common series of parent patents and applications. Each of the Asserted Patents has the title of "Method of Transmitting and Receiving Radio Access Information in a Wireless Mobile Communications System." Each of the Asserted Patents lists the same inventors and shares the same assignee, Evolved Wireless LLC. For the purposes of this Claim Construction Order, citations to the specification will generally refer to the '679 Patent specification but apply equally to the '326 Patent as the two patents share the same specification and figures.

The Asserted Patents describe and claim a handover procedure for a mobile terminal (e.g., a wireless device such as a cell phone). When a mobile terminal moves away from a base station to which it is currently connected (known as the source base station) toward another base station (known as the target base station), a mechanism is needed to transfer the mobile terminal's connection from the source base station to the target base station. That mechanism is commonly called a "handover." As generally described in the specification and claims, a target base station assigns a preamble to a mobile terminal and transmits information related to the preamble to a source base station, which then transfers preamble information to the mobile terminal. The mobile terminal then uses the preamble information in a random-access procedure to access the target base station.

Figure 9 of the Asserted Patents, reproduced below, is an exemplary diagram for transmitting and receiving radio connection information according to one embodiment of the patents:



In particular, Figure 9 illustrates communications used in effecting a handover of mobile terminal (UE) from a cell of source base station (eNB) to a cell of target base station (eNB).  First, the UE transmits a measurement report to source base station via step S10.  '679 Patent, 6:23–32.  The source base station then makes a handover decision in step S11 using the information contained in the measurement report sent by the mobile terminal.  *Id.* at 6:33–38.  If a handover is to be performed, the source base station transmits a "handover request message" in step S12 to the target base station to request a handover for the mobile terminal to the target base station.  *Id.* at 6:39-44.  If the target base station allows the handover, it responds to the source base station with a "handover confirm message" in step S13, which may include information "necessary in the course of connecting" the mobile terminal to the target cell.  *Id.* at 6:45–51.  Once the source base station receives the handover confirm message from the target base station, the source base station sends

a "handover command message" to the mobile terminal in step S14.  *Id.* at 7:14–22.  The handover command message may include "information of the signature and the preamble which is to be used" in the access procedure to the target base station.  *Id.*  In step S15, the mobile terminal uses the information contained in the handover command message to establish a radio connection with the target base station.  *Id.* at 7:23–44.  Next, in step S16, the target base station may allocate the uplink radio resource to the mobile terminal for the mobile terminal to access the target base station and to transmit the handover complete message to the target base station.  *Id.* at 7:48–56.  Finally, in step S17, the mobile terminal sends a handover complete message to the target base station based on a scheduling grant of the target base station.  *Id.* at 7:57–65.

The Abstract of the Asserted Patents is reproduced below:

In a wireless mobile communications system, a method of transmitting and receiving radio access information that allows a faster and efficient way of establishing a radio connection between a terminal and a target base station while performing a handover for the terminal to a cell of the target base station. The network transmits in advance, the radio access information and the like, to the terminal so that the terminal can be connected with the target cell in a faster manner which minimizes the total time for the handover process.

Claim 1 of the '679 Patent is exemplary and is reproduced below:

A method of transmitting uplink data in a wireless communication system, the method comprising:

receiving in a terminal from a network, preamble information generated by the network, wherein the preamble information is received via dedicated signaling in downlink,

wherein the received preamble information is either a dedicated preamble or an index of the dedicated preamble, and wherein the preamble information is used for performing a random access channel (RACH) procedure, and

wherein the dedicated preamble is used for a specific terminal;

transmitting from the terminal to the network, the dedicated preamble on a random access channel (RACH) in uplink;

5

receiving in the terminal, a random access response in response to the transmitted dedicated preamble, wherein the random access response includes at least one of time information for a handover operation, an uplink grant for the handover operation, time information for a downlink data arrival, or a random access preamble identifier; and

transmitting the uplink data to the network using the uplink grant included in the random access response.

## II.  LEGAL PRINCIPLES

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The Court first examines a patent's intrinsic evidence to define the patented invention's scope.  *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims themselves, the specification and the prosecution history.  *Phillips*, 415 F.3d at 1312–13; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004).  The general rule— subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *see also Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp*., 383 F.3d 1295, 1301 (Fed. Cir. 2004).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.   "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent.  *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence is useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862) (internal quotation marks omitted).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent.  *Id.* at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and

determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not useful.  *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.*

## B.  Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."  *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal.").  "The standards for finding lexicography or disavowal are 'exacting.'"  *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term."  *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249.  The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision."  *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.  *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction,

representing a clear disavowal of claim scope.").  "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

## III.  CONSTRUCTION OF AGREED TERMS

Before the *Markman* hearing, the parties agreed to the following meanings for the following terms.  (*See, e.g.*, Dkt. No. 58 (Joint Claim Construction Chart).)

| TERM | AGREED CONSTRUCTION |
|------|---------------------|
| "uplink data"<br><br>'679 Patent, claims 1, 3, 6, 8<br>'326 Patent, claims 18, 19, 20, 21 | "data sent or intended to be sent from the mobile terminal to the network" |
| "downlink data"<br><br>'679 Patent, claims 1, 3, 6, 8 | "data sent or intended to be sent from the network to the mobile terminal" |

Accordingly, the Court adopts the constructions agreed to by the parties as listed above.

## IV.  CONSTRUCTION OF DISPUTED TERMS

The parties' positions and the Court's analysis as to the disputed terms within the claims of the Asserted Patents are presented below.  Three terms are presented for the Court's consideration.

### A.  the use of a "preamble" in the random-access procedure ('326 and '679 Patents)

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "wherein the preamble information is used for performing a random access channel (RACH) procedure"<br><br>('679 Patent) | Plain and ordinary meaning, where the information that is received by the terminal (i.e., the "preamble information") need not be the same information that is sent from the terminal to the network (i.e., the "dedicated preamble"). | Plain and ordinary meaning |

| "perform[ing] … a random access procedure with the target base station … using the information related to the preamble" ('326 Patent) | Plain and ordinary meaning, where "using the information related to the preamble" in a random-access procedure does not mean that the "information related to a preamble" has to be sent from the mobile device to the target base station. | Plain and ordinary meaning |
|---|---|---|

### (1) The Parties' Positions

Plaintiff argues that a person of skill in the art would understand that in the context of the Asserted Patents, the signal sent by the mobile terminal to the target base station must be based on—but does not have to be the same as—the signal received from the source base station. (*See, e.g.*, Dkt. No. 66 at 17.) Plaintiff argues that the claim language of the Asserted Patents clearly indicates that the information that is received by the mobile device can be different from what the mobile device sends to the target base station. (*Id.*) Plaintiff argues that Defendant's construction ignores the express language in the claims and impermissibly requires that what is transmitted is simply what is received from the source base station. (*Id.* at 18.) Plaintiff argues that the specification supports its position that the information received by the terminal from the source base station does not have to be the same signal that the mobile terminal sends to the target base station. (*Id.* at 19–20.) Plaintiff argues that the specification does not say that the handover command must include the preamble itself. (*Id.*) Plaintiff argues that the patentee specified during prosecution that the crux of the invention was sending of a dedicated preamble to the target base station. (*Id.* at 21–22.) Plaintiff further argues that extrinsic evidence supports its position that "use" of information received from a source base station could be used to generate a preamble. (*Id.* at 23–26.)

Defendant argues that the plain language of the claims is clear that the dedicated preamble transmitted by the mobile terminal is the same dedicated preamble received by the mobile terminal as preamble information.  (*See, e.g.*, Dkt. No. 68 at 8–14.)  As to the '679 Patent, Defendant argues that the claim language does not require "a" dedicated preamble to be sent by the mobile terminal—it requires "the" dedicated preamble to be sent.  (*Id.* at 9.)  As to the '326 Patent, Defendant argues that the claim language plainly requires that the mobile terminal use the same information related to a preamble to perform a random access procedure with the target base station that it received from the source base station to connect with the target base station.  (*Id.* at 14–15.) Defendant argues that Plaintiff wants to rewrite the claims to cover situations where only an index of the preamble is received and not the entire preamble.  (*Id.* at 9–10.)  Defendant argues that the specification never uses the term "dedicated preamble" and does not teach a mobile terminal sending a dedicated preamble other than the dedicated preamble that it receives.  (*Id.* at 16.) Defendant argues that there is no support in the specification or prosecution history to override the plain claim language and rewrite the claims a proposed by Plaintiff.  (*Id.* at 17–19.)

Plaintiff further argues that Defendant's arguments read a phrase entirely out of the claims and ignore the claim language.  (*See, e.g.*, Dkt. No. 70 at 5–6.)  Plaintiff argues that Defendant misrepresents the claim language and places undue emphasis on the claim's antecedent basis for the dedicated preamble.  (*Id.* at 6–7.)

### (2) Analysis

The parties group both of these disputed terms together based on a shared dispute.  The parties do not dispute the term's plain and ordinary meaning as much as the result of the claimed language.  The parties dispute whether a dedicated preamble itself has to be transmitted to the

12

mobile terminal or whether an index of the dedicated preamble can be transmitted.  Overall, the Court rejects Defendant's construction and arguments.

The parties' primary focus and dispute revolves around the claim language.  The disputed terms appear in independent claims 1 and 6 of the '679 Patent and independent claims 14 and 18 of the '326 Patent.

Claim 1 of the '679 Patent is reproduced below:

> A method of transmitting uplink data in a wireless communication system, the method comprising:
>
> **receiving in a terminal from a network, <u>preamble information</u> generated by the network,** wherein the preamble information is received via dedicated signaling in downlink,
>
> **wherein the <u>received preamble information</u> is either a dedicated preamble or an index of the dedicated preamble,** and wherein the preamble information is used for performing a random access channel (RACH) procedure, and
>
> wherein the dedicated preamble is used for a specific terminal;
>
> **transmitting from the terminal to the network, <u>the dedicated preamble</u> on a random access channel (RACH) in uplink**;
>
> receiving in the terminal, a random access response in response to the transmitted dedicated preamble, wherein the random access response includes at least one of time information for a handover operation, an uplink grant for the handover operation, time information for a downlink data arrival, or a random access preamble identifier; and
>
> transmitting the uplink data to the network using the uplink grant included in the random access response.

(emphasis added).  Claim 6 of the '679 Patent is similar related to the disputed term.

Claim 14 of the '326 Patent is reproduced below:

> A method to perform a random access procedure in a mobile communications system comprising:

> **receiving, by a terminal, a handover command message** from a source base station which has determined that a handover should occur to a target base station, **wherein the handover command message includes <u>information related to a preamble</u> for the terminal previously defined in a handover confirm message sent from the target base station to the source base station**;
>
> **in response to the handover command message, performing, by the terminal**, a random access procedure with the target base station to connect with the target base station **using <u>the information related to the preamble</u>**; and
>
> transmitting, by the terminal, a handover complete message to the target base station.

(emphasis added).  Claim 17 of the '326 Patent is similarly related to the disputed term.

Claim 1 of the '679 Patent requires a mobile terminal receiving "preamble information" generated by a network, wherein the received preamble information "is either a dedicated preamble or an index of the dedicated preamble."  The claim then requires the mobile terminal to transmit "the dedicated preamble" to the network.  Claim 6 of the '679 Patent is similar.  Likewise, claim 14 of the '326 Patent requires a mobile terminal receiving "information related to a preamble for the terminal" from a source base station and in response, the mobile terminal performs a random access procedure with the target base station "using the information related to the preamble." Claim 18 of the '326 Patent is similar.  In the '679 Patent, the claims are clear that "the preamble information is either a dedicated preamble or an index of the dedicated preamble," and that the "dedicated preamble" is transmitted by the mobile terminal.  In the '326 Patent, the claims do not reference a dedicated preamble or an index of the dedicated preamble; instead, the '326 Patent claims merely state that "information related to a preamble" is received and used by the mobile terminal.  While the claim language in each patent is slightly different, both parties admit and argue that the claim issues are the same between both patents.

The specification provides an exemplary diagram in Figure 9 for transmitting and receiving radio communications in the event of a handover for a mobile terminal according to one embodiment of the invention.  The accompanying specification disclosure is pertinent to the disputed claim terms.  If a handover is to be performed, the source base station transmits a "handover request message" in step S12 to the target base station to request a handover for the mobile terminal to the target base station.  '679 Patent, 6:39–44.  If the target eNB allows the handover, it responds to the source base station with a "handover confirm message" in step S13, which may include information "necessary in the course of connecting" the mobile terminal to the target cell.  *Id.* at 6:45–51.  Once the source base station receives the handover confirm message from the target base station, the source base station sends a "handover command message" to the mobile terminal in step S14.  *Id.* at 7:14–22.  The handover command message may include "information of the signature and the preamble which is to be used" in the access procedure to the target base station.  *Id.*  In step S15, the mobile terminal uses the information contained in the handover command message to establish a radio connection with the target base station.  *Id.* at 7:23–44.  Next, in step S16, the target base station may allocate the uplink radio resource to the mobile terminal for the mobile terminal to access the target base station and to transmit the handover complete message to the target base station.  *Id.* at 7:48–56.  Finally, in step S17, the mobile terminal sends a handover complete message to the target base station based on a scheduling grant of the target base station.  *Id.* at 7:57–65.

At no point does the specification require the handover command to include the preamble itself.  Instead, the specification states that "the preamble transmission of the UE [mobile terminal] is based upon information in the handover command message received from the source eNB [base station]."  '679 Patent, 7:26–28.  The specification does not require the same information

transmitted to (or received by) the mobile terminal to be transmitted to the target base station.  The specification teaches that the information received from the mobile terminal from the source base station in the handover command message (necessary information which comes from the target base station as well as the signature and the preamble) may be different from that transmitted from the mobile terminal to the target base station.  *See id.* at 7:14–56.

Defendant's claim construction argument is focused on the claim language of the '679 Patent, and is primarily that the dedicated preamble that the mobile device sends to the target base station must be received from the source base station because "the dedicated preamble" needs "a dedicated preamble" for antecedent basis.  The Court rejects Defendant's "antecedent" basis arguments, as that contradicts the claim language and the specification.  The claims do not expressly require the information transmitted from the mobile terminal to be identical to the information received by the terminal.  The '679 Patent is clear that the mobile terminal transmits the "dedicated preamble," but also references the mobile terminal receiving "either a dedicated preamble or an index of the dedicated preamble."  The claim language indicates that the information that is received by the mobile device can be different from what the mobile device sends to the target base station.  This reading is consistent with that of the specification, which teaches that the information received from the mobile terminal from the source base station in the handover command message may be different from that transmitted from the mobile terminal to the target base station.  *See* '679 Patent, 7:14–56.

The claim language of the '326 Patent is even more clear.  Claims 14 and 18 of the '326 Patent never use the words "dedicated" preamble or "index."  Simply put, there is no language in the claims of the '326 Patent that requires a dedicated preamble to be received by the mobile terminal or transmitted by the mobile terminal.  Instead, the '326 Patent merely references

16

"information related to a preamble," which could be the preamble itself, an index of the preamble, or other information related to the preamble.  At most, and as argued by the Defendant, the claim language requires receiving "information related to a preamble for the terminal" and then using "the information related to the preamble."  However, like the '679 Patent, the claims in the '326 Patent do not expressly require that the information transmitted from the mobile terminal is the same information received by the mobile terminal.

For these reasons, the Court rejects Defendant's argument that if only an index is received, and not the preamble itself, there is no infringement.  Here, the claim language in both patents does not require a dedicated preamble itself to be received or requires that the identical information received by the mobile unit must be transmitted from the mobile unit.  The Court finds that the parties' reliance on the prosecution history and extrinsic evidence on these terms are not particularly helpful.  The Court finds that a person of skill in the art would understand that in the context of the Asserted Patents, the signal sent by the mobile terminal to the target base station must be based on—but does not have to be the same as—the signal received from the source base station.

The parties' dispute is not on the plain and ordinary meaning of the term, but rather the effect of the surrounding claim limitations.  Because this Order and the guidance contained herein resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase require further construction.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)

17

("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (citing *U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes the phrase "**wherein the preamble information is used for performing a random access channel (RACH) procedure**" in the '679 Patent to have its **plain and ordinary meaning** and that the information received by the mobile terminal does not have to be the same information transmitted by the mobile terminal.

The Court hereby construes the phrase "**perform[ing] . . . a random access procedure with the target base station . . . using the information related to the preamble**" in the '326 Patent to have its **plain and ordinary meaning** and that the information received by the mobile terminal does not have to be the same information transmitted by the mobile terminal.

**B. "information related to a preamble for the terminal" ('326 Patent)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "information related to a dedicated preamble that is used for a specific terminal" | Plain and ordinary meaning |

**(1) The Parties' Positions**

Plaintiff argues that the use of the phrase "for the terminal" in the claim language of the '326 Patent indicates to a person of skill in the art that the "preamble" is assigned to a particular mobile terminal during handover.  (*See, e.g.*, Dkt. No. 66 at 27.)  Plaintiff argues that the specification teaches that a "dedicated preamble" is the essence of the invention, because it solves a problem in the prior art of common preambles between multiple mobile terminals.  (*Id.* at 27–28.)  Plaintiff argues that the proposed solution of assigning a particular preamble to for the mobile terminal to use during handover solves the collision problem referenced in the prior art.  *Id.*  Plaintiff also argues that, in the parent patent applications, the patentee disavowed embodiments

where the mobile device did not send a dedicated preamble to the target base station and distinguished the prior art based on the device-specific nature of the preamble that is sent from the mobile terminal to the target base station.  (*Id.* at 28–30.)

Defendant argues that the words of the claim are clear and unambiguous.  (*See, e.g.*, Dkt. No. 68 at 22.)  Defendant argues that nowhere does the claim require the preamble to be "dedicated" and used for a "specific" terminal as proposed by Plaintiff.  (*Id.*)  Defendant argues that if the patentee had desired to limit the scope of the claims to a dedicated preamble for a specific terminal, it knew precisely how to do so—as it did in other cancelled claims in the '326 Patent and in other related patents.  (*Id.* at 23–24.)  Defendant argues that it is clear that the absence of the words "dedicated" and "specific" in the asserted claims means that the patentee never intended to include them.  (*Id.*)  Defendant also argues that Plaintiff does not point to any clear and unmistakable disavowal in the prosecution history.  (*Id.* at 25–26.)  Defendant also argues that the "dedicated preamble" is not the essence of the invention in the specification and that Plaintiff provides no good reason to limit the claims to an embodiment or concept absent clear intention to do so.  (*Id.* at 27.)

Plaintiff further argues that a person of skill in the art would understand the relevant claim language to require the preamble to be reserved for a particular terminal.  (*See, e.g.*, Dkt. No. 70 at 9–10.)  Plaintiff argues that statements made during prosecution of a parent are relevant to claim construction of a child patent.  (*Id.* at 10.)  Plaintiff argues that eliminating the use of a "dedicated preamble" from the claims would undermine the purpose of the invention and effectively render the patented solution meaningless.  (*Id.*)

### (2) Analysis

The issue is whether the "preamble" referenced in the '326 Patent is a dedicated preamble that is used for a specific terminal (as in the '679 Patent).  On balance, the Court finds that the claim language controls, and adopts Defendant's construction.

The '326 Patent is a reissue patent, of which various original claims were cancelled and new claims were introduced.  In particular, original claims 1–13 were cancelled, and claims 14–21 were newly added.  Claim 14 of the '326 Patent is reproduced below:

> A method to perform a random access procedure in a mobile communications system comprising:
>
> receiving, by a terminal, a handover command message from a source base station which has determined that a handover should occur to a target base station, **wherein the handover command message includes <u>information related to a preamble for the terminal</u> previously defined in a handover confirm message sent from the target base station to the source base station**;
>
> **in response to the handover command message, performing, by the terminal**, a random access procedure with the target base station to connect with the target base station **using <u>the information related to the preamble</u>**; and
>
> transmitting, by the terminal, a handover complete message to the target base station.

(emphasis added).  Claim 18 is substantially similar related to the disputed phrase.  The words "dedicated" and "specific" are not referenced in the claims.  The claims do not require the preamble to be a dedicated preamble for a specific terminal.  The claims do not require a dedicated preamble to be received by the mobile terminal or transmitted by the mobile terminal.  Rather, the plain language of the claims simply requires "information related to a preamble."  This claim language is in stark contrast to the cancelled claims in the '326 Patent.  For example, cancelled claim 1 of the '326 Patent is reproduced below:

> A method of performing a random access procedure in a mobile communications system, the method comprising:
>
> receiving, by a terminal, a handover command message from a source base station,
>
> **wherein the handover command message includes preamble information** for the random access procedure,
>
> **wherein the preamble information is a specific preamble used only for a specific terminal**, and
>
> wherein the **specific preamble** is determined by a target base station; and
>
> performing, by the terminal, the random access procedure with the target base station using the **specific preamble**.

(emphasis added).  This cancelled claim specifies that the preamble information "is a specific preamble used only for a specific terminal," and then repeats "specific preamble" multiple times in the claim.  This identical language is found in cancelled independent claims 7, 10, and 12 of the '326 Patent.  The language specifying a "specific" preamble or a "specific" terminal is noticeably missing in independent claims 14 and 18 of the '326 Patent.

The Court finds the claim language controlling.  Nowhere in the relevant claim language does it state that the preamble must be dedicated and used for a specific terminal as Plaintiff contends.  Nowhere in the claim does it state that the mobile terminal receives a dedicated preamble or that the mobile terminal transmits a dedicated preamble.  Instead, the claim language simply states that "information related to a preamble for the terminal" is received by the mobile terminal and subsequently used by the mobile terminal.

If the patentee desired to limit the scope of the claims to a dedicated preamble for a specific terminal, it knew precisely how to do so.  Indeed, previously issued and then cancelled claims within the '326 Patent itself include narrowing language absent from the asserted claims.  Likewise, the "dedicated" preamble language appears in claims of the '679 Patent.  *See, e.g.*,

claims 1 and 6 of the '679 Patent.  Still further, other patents within the '326 Patent's family similarly demonstrate that the patentee knew how to—but chose not to—narrow the asserted '326 Patent claims as proposed by Plaintiff.  *See, e.g.*, claims 1, 8, 15, and 24 of U.S. Patent No. 7,809,373 ("wherein the preamble information is a dedicated preamble used only for a specific terminal"); claims 1 and 6 of U.S. Patent No. 8,219,097 ("wherein the dedicated preamble is used for a specific terminal"); claims 1, 7, 10, 12, 14, 19, and 23 of U.S. Patent No. RE46,602 ("wherein the preamble information is a specific preamble used only for a specific terminal").  The fact that patentee knew how to claim a "dedicated preamble" and a "specific terminal"—and in fact did so in multiple instances across multiple claims and patents—is strong evidence that the patentee never intended to do so in the present claims when that language is noticeably lacking.

Plaintiff's reliance on the specification is not persuasive.  Plaintiff relies on an essence-of-the-invention argument.  On balance, the Court finds that the specification citations are not controlling here.  First, the specification does not use the word "dedicated" or "dedicated preamble."  Likewise, the specification does not use the word "specific terminal."  Second, the Court is not convinced that even if the "dedicated preamble" is the essence of the invention that the limitation should be inserted into the claims.  Indeed, to do so would be contrary to the claim language and apparent intent of the patentee to leave that language out of the claims.  The Court finds that there is nothing in the specification that clearly requires insertion of the additional limitations as proposed by Plaintiff.

The prosecution history for the '326 Patent is relevant.  In particular, the patentee deliberately removed the phrase "specific" preamble to broaden the claims.  In the Declaration for Reissue of the '326 Patent, dated April 17, 2020, the Applicant expressly admitted that it is "removing the requirement that the preamble information is a specific preamble as recited for

example in the patented claims." (*See, e.g.*, Dkt. No. 66-3 at 156.)  Thus, the patentee expressly represented that the reissue claims were broader than the original patented claims and admitted that it was no longer requiring the limitation that the preamble information is a specific preamble. *Id.*  Plaintiff's reliance on the prosecution history is not persuasive.  Plaintiff relies on a disavowal argument in prosecution histories of related parent patent applications.  On balance, the Court finds that the cited statements in the prosecution history do not amount to a clear and unmistakable disclaimer.   If the prosecution history statements "are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established. *Tech. Prop. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1358 (Fed. Cir. 2017).  The Court finds that mere criticism of a particular embodiment or prior art, by itself, is not sufficient to rise to the level of a clear disavowal.  Further, Plaintiff is not able to point to any arguments in the prosecution history of the '326 Patent itself as opposed to parent patent applications.  Arguments on claim language and prior art in parent patent applications regarding different claim language is not necessarily helpful or relevant as to the claim language specifically used in the '326 Patent.  As mentioned above, the claim language in the '326 Patent is different from other claims in the parent patents, and even the '326 Patent itself originally included claims with the language "specific preamble" and "specific terminal" that were cancelled during reissue.  While the parties do dispute the relevance of certain Notice of Allowance comments by the Examiner in the prosecution of the '326 Patent, the Court finds the Applicant's statements regarding its intent to remove the specific preamble limitation as controlling.

Overall, the Court rejects Plaintiff's arguments.  On its face, the claim language is clear. The claim language does not require the limitations proposed by Plaintiff.  In effect, Plaintiff is asking the Court to re-write the claim language, which the Court rejects.  Further, the Court finds

that there is no lexicography, disavowal or disclaimer in the specification or prosecution history to require the importation of limitations as suggested by Plaintiff, and rejects Plaintiff's arguments. Simply put, the patentee expressly chose not to use the terms "dedicated preamble" and "specific terminal," particularly when it used "specific preamble" and "specific terminal" in cancelled claims in the same patent and expressly admitted that it was removing the "specific preamble" limitation.  The Court must give effect to the patentee's choice of terms.  The Court finds that one of ordinary skill in the art, based upon the specification and the claims, would understand the disputed term to have its plain and ordinary meaning.  The parties' dispute is not on the plain and ordinary meaning of the term, but rather whether a specific limitation exists based on the specification and prosecution history.

Because this resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase require further construction.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes the term "**information related to a preamble for the terminal**" in the '326 Patent to have its **plain and ordinary meaning**.

## V.  CONCLUSION

The Court adopts the above constructions set forth in this Order for the disputed terms of the Asserted Patents, and as summarized below.

24

| Disputed Term | The Court's Construction |
|---|---|
| "wherein the preamble information is used for performing a random access channel (RACH) procedure"<br><br>('679 Patent) | Plain and ordinary meaning |
| "perform[ing] … a random access procedure with the target base station … using the information related to the preamble"<br><br>('326 Patent) | Plain and ordinary meaning |
| "information related to a preamble for the terminal"<br>('326 Patent) | Plain and ordinary meaning |

The parties are **ORDERED** that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are **ORDERED** to refrain from mentioning any portion of this Order, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within fourteen (14) days of the issuance of this Order, the parties are hereby **ORDERED** to, in good faith, meet and confer regarding mediation.  (*See* Dkt. No. 40 at 4–5.)

**So Ordered this**

**Apr 27, 2023**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE