**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EVOLVED WIRELESS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Civil Action No. 2-21-cv-00033 |

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE ASSERTED CLAIMS FOR LACK OF WRITTEN DESCRIPTION**

**TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................ 1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................. 1

III.  LEGAL STANDARD .................................................................................................. 6

IV.   ARGUMENT................................................................................................................. 6

      A.    There Is No Written Description Support For "An Index Of The Dedicated Preamble" In The '679 Patent's Specification Or In Its Priority Applications ................................................................................................................... 7

      B.    There Is No Written Description Support For "A Transceiver Configured To Transmit Or Receive The Uplink Data" In The '679 Patent's Specification Or In Its Priority Applications..................................................... 13

V.    CONCLUSION............................................................................................................ 16

i

████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
   299 F.3d 1336 (Fed. Cir. 2002) ................................................................................. 15

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ................................................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................................... 6

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc) ................................................................ 7, 9

*Briggs & Stratton Corp. v. Chongqing Rato Power Co.*,
   No. 5:13–CV–0316, 2014 WL 4888266 (N.D.N.Y. Sept. 30, 2014) ................... 13, 14, 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................................... 6

*Chiron Corp. v. Genentech, Inc.*,
   363 F.3d 1247 (Fed. Cir. 2004) ................................................................................. 11

*CommScope Techs. LLC v. Dali Wireless Inc.*,
   10 F.4th 1289 (Fed. Cir. 2021) ................................................................................. 11

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
   323 F.3d 956 (Fed. Cir. 2002) ................................................................................... 11

*In re Katz Interactive Call Processing Pat. Litig.*,
   639 F.3d 1303 (Fed. Cir. 2011) ................................................................................... 7

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005) ............................................................................... 8, 11

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997) ................................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..................................................................................................... 6

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
   923 F.3d 1368 (Fed. Cir. 2019) ................................................................................. 12

███████████████████████████████████████

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008) ...................................................................... 7

*Rivera v. Int'l Trade Comm'n*,
857 F.3d 1315 (Fed. Cir. 2017) ..............................................................7, 12, 16

*Toshiba Corp., v. Imation Corp.*,
681 F.3d 1358 (Fed. Cir. 2012) ...................................................................... 6

*Transperfect Glob., Inc. v. Matal*,
703 F. App'x 953 (Fed. Cir. 2017)...........................................................7, 13, 16

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998) ...................................................................... 12

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
264 F.3d 1111 (Fed. Cir. 2001) ...................................................................... 7

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991) ....................................................................8, 12

## Statutes

35 U.S.C. § 112............................................................................................... 1

## Other Authorities

FED. R. CIV. P. 56 ............................................................................................. 6

The Asserted Claims (1, 3, 6, 8) of United States Patent No. RE46,679 ("the '679 patent") are invalid under 35 U.S.C. § 112 for two reasons: (1) the specification provides no written description support for "index of the dedicated preamble" found in claims 1 and 6; and (2) the specification provides no written description support for "a transceiver configured to transmit or receive the uplink data" found in claim 6. Claims 3 and 8 of the '679 patent depend on claims 1 and 6 respectively and are invalid for the same reasons.

## I.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.    Whether "index of the dedicated preamble" in the Asserted Claims renders them invalid for lack of written description under 35 U.S.C. § 112.

2.    Whether "a transceiver configured to transmit or receive uplink data" in claim 6 renders it invalid for lack of written description under 35 U.S.C. § 112.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Claim 1 of the '679 patent recites (the term at issue in this Motion is emphasized):

| Claim | Claim Language |
|---|---|
| **1.pre** | A method of transmitting uplink data in a wireless communication system, the method comprising: |
| **1.a** | receiving in a terminal from a network, preamble information generated by the network |
| **1.b** | wherein the preamble information is received via dedicated signaling in downlink |
| **1.c** | wherein the received preamble information is either a dedicated preamble or **an index of the dedicated preamble** |
| **1.d** | and wherein the preamble information is used for performing a random access channel (RACH) procedure, and |
| **1.e** | wherein the dedicated preamble is used for a specific terminal |
| **1.f** | transmitting from the terminal to the network, the dedicated preamble on a random access channel (RACH) in uplink" |
| **1.g** | receiving in the terminal, a random access response in response to the transmitted dedicated preamble |
| **1.h** | wherein the random access response includes at least one of time information for a handover operation, an uplink grant for the handover operation, time information for a downlink data arrival, or a random access preamble identifier; and |
| **1.i** | transmitting the uplink data to the network using the uplink grant included in the random access response |

2.      Claim 3 of the '679 patent is dependent on Claim 1 of the '679 patent.

3.      Claim 6 of the '679 patent recites (the terms at issue in this Motion are emphasized):

| Claim | Claim Language |
|---|---|
| **6.pre** | A mobile terminal for transmitting uplink data in a wireless communication system, the mobile terminal comprising: |
| **6.a** | **a transceiver configured to transmit or receive the uplink data**; |
| **6.b** | a memory configured to store the uplink data transmitted or received via the transceiver or from an external source; and |
| **6.c** | a processor cooperating with the transceiver and the memory, the processor configured to: |
| **6.d** | receive, from a network, preamble information generated by the network, wherein the preamble information is received via dedicated signaling in downlink, wherein the preamble information is used for performing a random access channel (RACH) procedure, wherein the received preamble information is either a dedicated preamble or **an index of the dedicated preamble**, and wherein the dedicated preamble is used for a specific terminal; |
| **6.e** | transmit, to the network, the dedicated preamble on a random access channel (RACH) in uplink; |
| **6.f** | receive a random access response in response to the transmitted dedicated preamble, wherein the random access response includes at least one of time information for a handover operation, an uplink grant for the handover operation, time information for a downlink data arrival, or a random access preamble identifier; and |
| **6.g** | transmit the uplink data to the network using the uplink grant included in the random access response. |

4.      Claim 8 of the '679 patent is dependent on Claim 6 of the '679 patent.

5.      The '679 patent relates to the handover procedure defined in the Universal Mobile Telecommunication System (UMTS) standard. '679 patent at 9:19-30; *see also id.* at 1:39-56, 3:45-63, 4:9-18, Fig. 1, Fig. 6. More specifically, the '679 patent is directed at an improvement to the handover procedure used in UMTS. '679 patent at 1:29-35, 5:25-31. UMTS is the third-generation cellular standard (3G). LTE, which is the standard accused of infringing in this case, is the fourth-generation cellular standard (4G).

6.      The '679 patent claims priority to Korean Application No. 10-2006-0063135 (the "Korean Application").[1] Ex. A (Korean Application). The Korean Application was filed on July 5, 2006. *Id.* Evolved contends that the Korean Application provides written description support for the "index of the dedicated preamble" limitation.  Ex. B (Laneman EDTX Rpt.) ¶¶ 445-446, 449-456.

7.      Dr. Laneman—Evolved's invalidity expert—concedes that the Korean Application does not explicitly disclose the terms "index of the dedicated preamble," "index," or "dedicated preamble":

> Q. Okay. But you'll agree with me that this -- the sentence you were referring to in the third paragraph of [] page 10 does not refer to an index of a preamble specifically; right?
>
> A. The word 'index' is not in the paragraph.
>
> Q. Right. And -- so we can all agree that [] the word 'index' or 'index of the preamble' is not specifically disclosed in that paragraph, explicitly?
>
> A. The [] word in and of itself is not in the paragraph, I'm comfortable saying that.

Ex. C (Laneman ITC Tr.) at 97:16-98:2.

8.      Dr. Laneman further concedes that (1) an "index of the dedicated preamble" is not inherently/necessarily disclosed in the Korean Application, and (2) it would not be obvious to a POSITA to use an "index of the dedicated preamble" in view of the Korean Application. Ex. C (Laneman ITC Tr.) at 100:22-102:7 ("[I]t is ***not entirely obvious*** to me that [] the index would be used … to one of skill in the art…. ***I wouldn't say that that paragraph [of the Korean Application] says it has to be an index***."), 108:3-11 ("I believe there is disclosure there to support the notion that the target base station determines a preamble index and communicates it to the

---

[1] The '679 patent is a reissue of U.S. Patent No. 8,219,097 (the "'097 patent"). The '097 patent's application was filed on August 27, 2010 and is a continuation of application no. 11/553,939, now U.S. Patent No. 7,809,373 (the "'373 patent"). The '373 patent was filed on October 27, 2006 and claims the benefit of earlier filing date and right of priority to U.S. Provisional Application No. 60/732,080, filed Oct. 31, 2005, and the Korean Application.

eNode -- to the UE, and the handover confirm message [] *as a possibility*.”), 110:8-14 (“***I don't say it's obvious that one would have to use that index. It's quite natural, given enough system information*** available to the UE, so that the index is relevant in order for it to be able to [] pursue the random access procedure to the target eNodeB.”), 111:18-112:11 (“And to one of skill in the art, reading this patent, looking at the [] prevailing standards at the time, thinking about the sequence of possible transmissions where [] system information might be received before on [] the downlink broadcast information, where [] that system information might be received before the UE initiates the random access procedure, might be received after, in which case [], ***one can imagine several different embodiments*** from this description, one of which would be that the UE has enough system information to know the list of preambles, and so the target eNodeB only has to communicate the index.”).

9.      During the *Markman* hearing, Evolved's counsel conceded that the patent does not disclose an “index of the dedicated preamble.”  Ex. D (Apr. 12, 2023 *Markman* Hrg. Tr.) at 11:19-13:4 (“THE COURT: Is there a discussion that you are aware of in the specification where the index of a dedicated preamble is discussed? MR. WRIGHT: [] But the direct answer to your question is no, the patent does not explicitly say here is an example of a preamble index being sent from the source base station to the mobile device.”).  Evolved's counsel also conceded that the patent does not describe how a “dedicated preamble” could be generated based on an “index of the dedicated preamble.” Ex. D (Apr. 12, 2023 *Markman* Hrg. Tr.) at 13:15-14:18 (“THE COURT: I understand that the transition process from index to preamble is not part of the claim language, but you've got to get from Point A to Point B. And the more that you're told about how to do it, the stronger I think your argument is that this is what the patent really teaches. And I guess maybe the converse of that is true--the less it's taught perhaps the weaker the argument. That's really what I'm trying

4

to get at. MR. WRIGHT: [] But the generation process itself we agree is not spelled out directly in the specification.").

10.     Although the Korean Application was filed on July 5, 2006, the term "index of dedicated preamble" was not introduced until July 1, 2011.  Specifically, all the pending claims of the '097 patent application were canceled, and 18 new claims were added in an amendment. The phrase "index of the dedicated preamble" was introduced in the new claims. Ex. E (July 1, 2011 Claim Amendment); *see also* Ex. B (Laneman EDTX Rpt.) ¶¶ 352-354.  This was the first time "index of the dedicated preamble" appeared in the claims of the '679 patent family.

11.     Evolved contends that "ra-PreambleIndex" parameter defined in the LTE specification satisfies the "index of the dedicated preamble" limitation.   Notably, the "ra-PreambleIndex" parameter was added to 3GPP technology specification 36.331 in a change request on March 2008. Ex. F (RP-080164).  Thus, the '097 patent application's claims were amended to include the new and previously undisclosed "index of the dedicated preamble" limitation approximately three years after the LTE standard introduced the "ra-PreambleIndex" parameter and approximately five years after the Korean Application was filed.

12.     Claim 6 of the '679 patent recites: "A mobile terminal for transmitting uplink data in a wireless communication system, the mobile terminal comprising: a transceiver configured to transmit or receive the uplink data" and "a memory configured to store the uplink data transmitted or received via the transceiver or from an external source."

13.     The parties agree that "uplink data" means "data sent or intended to be sent from the mobile terminal to the network." Dkt. 71 (Joint Claim Construction Chart) at 10; Dkt. 82 (Claim Construction Order) at 3.

14.     The '679 patent specification discloses a mobile terminal that transmits uplink data to a network. 5:1-11 ("As for channels used in uplink transmission for transmitting data from the mobile terminal to the network…."). The '679 patent specification does not disclose a mobile terminal receiving any uplink data sent from any source, including itself, a network, or another mobile terminal.  The '679 patent specification does not disclose a "transceiver" or a "memory." The only place "transceiver" appears in the '679 patent is in Claim 6.

## III.   LEGAL STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  *Toshiba Corp., v. Imation Corp.,* 681 F.3d 1358, 1361 (Fed. Cir. 2012) (citing FED. R. CIV. P. 56 and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). When the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986); *Anderson*, 477 U.S. at 257. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

## IV.   ARGUMENT

To satisfy the written description requirement, "all the limitations must appear in the specification.  The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, *a prior application itself must describe an invention, and do so in sufficient detail* that one skilled in the art can clearly conclude that the inventor invented

the claimed invention as of the filing date sought." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis added); *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008); *Transperfect Glob., Inc. v. Matal*, 703 F. App'x 953, 963 (Fed. Cir. 2017); *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1320 (Fed. Cir. 2017). "This requires that the written description **actually** or **inherently** disclose the claim element." *PowerOasis*, 522 F.3d at 1306 (citations omitted and emphasis added).

"[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Thus, when analyzing whether a patent meets the written description requirement, one cannot "bootstrap" the knowledge of a person of ordinary skill in the art ("POSITA") into the analysis and fill the gap in the disclosure through obviousness. *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118-20 (Fed. Cir. 2001) (holding that to comply with the written description requirement the location of the spring must be actually or inherently disclosed; that the location may be obvious from the disclosure is not enough); *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1320 (Fed. Cir. 2011) (affirming summary judgment of invalidity because a broad "[b]ootstrapping [s]entence" is not enough).

### A.   There Is No Written Description Support For "An Index Of The Dedicated Preamble" In The '679 Patent's Specification Or In Its Priority Applications

Neither the '679 patent specification nor any of its priority disclosures provide written description support for "an index of the dedicated preamble." The specification does not describe or even mention an "index" of a preamble, whether dedicated or otherwise. Indeed, the specification never even uses the term "index." Dr. Laneman—Evolved's invalidity expert— admits that the specification does not disclose an "index of the dedicated preamble." SUF 7. Dr.

Laneman further admits that the specification does not inherently disclose "index of the dedicated preamble" and that the use of an "index of the dedicated" preamble would not even be obvious to a POSITA in view of the specification of the '679 patent. SUF 8. Dr. Laneman's admissions are fatal to the validity of the asserted claims. Under controlling Federal Circuit law, the written description requirement cannot be satisfied if undisclosed, claimed, subject matter would be obvious to a POSITA. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005) (written description requires "the invention [be] sufficiently [described] to convey to a person of skill in the art that the patentee had possession of *the claimed invention* at the time of the application, i.e., that *the patentee invented what is claimed*.") (emphasis added); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991) ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation"). Here, Dr. Laneman concedes that the undisclosed "index of the dedicated preamble" limitation would not even be obvious to a POSITA. SUF 8; Ex. C (Laneman ITC Tr.) at 100:22-102:7 ("[I]t is *not entirely obvious* to me that [] the index would be used … to one of skill in the art…. *I wouldn't say that that paragraph [of the Korean Application] says it has to be an index*."). Accordingly, the asserted claims are invalid for failure to meet the written description requirement as a matter of law.

Despite his fatal admissions, Dr. Laneman attempts to cobble together support for the "index of the dedicated preamble" limitation by combining a description of the alleged invention in the Korean Application (corresponding to Columns 6 and 7 of the '679 patent) with a separate description of the prior art in the Korean Application (corresponding to Column 5 of the '679 patent). Specifically, Dr. Laneman contends that the Korean Application's description of the prior

8

art "illustrate[s] the *concept* of an index" generally because it discloses a "four-bit binary number" that "represent[s]" one of 16 available signatures that in his opinion a POSITA would recognize as a "signature index." Ex. B (Laneman EDTX Rpt.) ¶ 269; *see also* '679 patent at 3:5-44.[2] Dr. Laneman is explicit that in his opinion this four-bit number "represent[s] an index for each of the sixteen preambles." Ex. B (Laneman EDTX Rpt.) ¶ 269.[3] In other words, it is his opinion that there are sixteen existing preambles (the disclosed "signatures") and they are "indexed" using a four-bit binary number—this binary number is in his opinion an index of a preamble.

Significantly, Dr. Laneman limits his opinion to this disclosure supporting the generic concept of an "index" *only*—*i.e.*, Dr. Laneman does not opine that this signature index "concept" is written description support for an index *of a dedicated preamble*. *See* Ex. B (Laneman EDTX Rpt.) ¶ 269. The reason for this is simple: there is no written description support whatsoever for the claim term. Indeed, the portion of the Korean Application (and '679 patent specification) cited

---

[2] Dr. Laneman misreads this disclosure from the Korean Application, which he quotes in full in paragraph 267 of his report. That disclosure states: "the downlink physical channel AICH transfers a 16-symbol signature $S_i$ (i = 0, …, [15])" and "[a] preamble part of an uplink physical channel PRACH also transfers a 16-symbol signature $S_i$ (i = 0, …, [15])." Ex. B (Laneman EDTX Rpt.) ¶ 267 (quoting Ex. A (Korean Application) at 5). The disclosure is clear that what is received is "a 16-symbol signature $S_i$"—not an index. The UE receives the signature itself on "the downlink physical channel" and then transmits *the same preamble* on uplink. There is no ambiguity in this disclosure. Furthermore, even if this is a disclosure of an index it cannot be a disclosure relevant to the claim because of the later disclosure that the *exact same thing* is transmitted in uplink. The claims require the index be received in downlink, but only a "dedicated preamble" be transmitted in uplink. Whichever strained reading Evolved applies, this disclosure does not provide written description for the index limitation of the claims.

[3] In support of this opinion, Dr. Laneman cites to 3GPP TS 25.213 V7.0.0 and concludes the use of signatures "would be well-known to a POSITA." Ex. B (Laneman EDTX Rpt.) ¶ 269. First, this is not part of the intrinsic record and therefore cannot provide written description. *See Ariad*, 598 F.3d at 1351. Second, Dr. Laneman's resort to a POSITA's understanding amounts to an argument that the invention would have been obvious based on its description. But the law is clear that even "a description that merely renders the invention obvious does not satisfy the [written description] requirement." *Id.* at 1352. Tellingly, however, Dr. Laneman concedes using an index would not even have been obvious. Ex. C (Laneman ITC Tr.) at 100:22-102:7 ("[I]t is *not entirely obvious* to me that [] the index would be used … to one of skill in the art.").

9

by Dr. Laneman is not a description of any alleged invention of the '679 patent. Instead, the discussion of "signatures" is found exclusively in the section of the '679 patent titled "***Background Art***." *See* '679 patent, 3:5-44. In fact, it is Dr. Laneman's opinion that these prior art signatures (assuming for the sake of argument they are even preambles) ***are not dedicated***: when discussing the Nokia submission prior art reference, Dr. Laneman opines that "conventional" RACH procedures, which the patent itself concedes utilized signatures ('679 patent, 5:65-6:4 ("In the related art … because of a possibility for a RACH collision (i.e., the same signature is being selected from multiple terminals that use the RACH)….")), are "contention-based" and therefore ***do not "involve a dedicated preamble."*** Ex. B (Laneman EDTX Rpt.) ¶ 528. Nor would it be consistent with either of Evolved's experts' definitions of what makes a preamble "dedicated." Both are clear: for a preamble to be "dedicated," there must be ***zero chance*** of any collisions. Ex. G (Jones ITC Tr.) at 73:2-9 ("a dedicated preamble is one that is reserved for use by a particular UE at a particular time, such that there is ***no possibility*** of contention."); Ex. H (Laneman 6/29/2023 Tr.) at 308:8-9 ("Dedicated means ***zero probability*** of collision."). But with only sixteen available signatures, however, the prior art has much greater than zero possibility of collision, which the patent recognizes as one of the problems with the prior art approach. '679 patent, 6:1-4 (there is "a possibility for a RACH collision" where "the same signature is [] selected from multiple terminals that use [] the RACH."). Because the disclosed prior art signatures are not "dedicated preambles," the discussion of those signatures cannot provide written description support for "an index of the dedicated preamble" limitation. That the patent arguably discloses the "concept of an index" generally is wholly irrelevant.

Even if the patent did disclose the concept of indexing into a set of existing signatures (*i.e.,* indexing into a table), that does not resolve the issue because there is inadequate written description

support for the scope of the claim.  Elsewhere in his report, Dr. Laneman *concedes* that indexing into a table is not the only index covered by the claims.  He states: "***An index could be used in the generation of a preamble***, but an index could be used to identify an existing preamble in a lookup table, as well."  Ex. B (Laneman EDTX Rpt.) ¶ 779.  He offers no opinions anywhere in his report that there is any written description in any relevant application regarding the generation of a preamble, dedicated or otherwise, from an index.  Accordingly, even giving full credit to Dr. Laneman's lookup table opinion, there is still no support for generating a preamble from any index, which Evolved admits falls within the scope of the claims, and the patents are therefore invalid. *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004) (holding that a jury instruction stating "[a]n application satisfies the written description requirement if persons of ordinary skill in the art at the time the application was filed would recognize from the application that ***the inventor actually invented the full scope of the invention as finally claimed in the patent***" was "the proper standard for the written description requirement") (emphasis added); [4] *see also LizardTech*, 424 F.3d at 1344; *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002) ("[The written] description is the *quid pro quo* of the patent system; the public must receive meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time."); *Vas-Cath*, 935 F.2d at 1561.

---

[4]   It is well-settled that the scope and breadth of the claims is the same for validity and infringement.  *See CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1299 (Fed. Cir. 2021) (a party cannot "simultaneously argue" that a product infringes because it includes a feature and that a prior art reference including the same feature does not invalidate); *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement.") (citation and internal quotation marks omitted).  While this principle is most often stated in the infringement/anticipation context, it applies with equal force to the infringement/written description context at issue here.

Furthermore, the "index of the dedicated preamble" limitation is not inherently disclosed in the '679 patent specification because the specification contains no teachings whatsoever related to dedicated preamble generation from an index. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("In order for a disclosure to be inherent, however, the missing descriptive matter ***must necessarily be present*** in the parent application's specification") (emphasis added); *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc*., 923 F.3d 1368, 1383 (Fed. Cir. 2019) (claims are invalid for lack of written description when the claims are not explicitly disclosed and there is no "evidence in the record demonstrating the inherency of the claimed feature").[5] Dedicated preamble generation from an index is not necessarily disclosed; indeed, there are no relevant disclosures at all.

Evolved may argue a POSITA could hypothetically understand how an index of a preamble could be used in the handover procedure described in the '679 patent. But the law is clear that knowledge of a POSITA cannot be "bootstrapped" into the written description analysis to "fill in the gaps" of the patent's specification when there is no evidence that the inventor had possession of the claimed subject matter for the limitations "the received preamble information is either a dedicated preamble or an index of the dedicated preamble." *Rivera*, 857 F.3d at 1322 (rejecting the argument that "the background knowledge of those skilled in the art can supplement the teaching in the specification to provide written description support" because "the written description inquiry looks to 'the four corners of the specification' to discern the extent to which the inventor(s) had possession of the invention as broadly claimed"); *Transperfect Glob., Inc. v.*

---

[5] Notably, there is no dispute that an index is not even required by the claims. Instead, the "index" is recited only once in each independent claim as one of two options for the "preamble information" received by the mobile terminal over a network. *See, e.g.*, '679 patent, claim 6 ("wherein the received preamble information is either a dedicated preamble or an index of the dedicated preamble"). Thus, the claims could be practiced without an index.

*Matal*, 703 F. App'x 953, 963 (Fed. Cir. 2017) ("attempts to bootstrap" a missing limitation into the disclosure failed to meet the written description requirement).

Furthermore, there is no written description in the Korean Application to which the '679 patent claims priority. Indeed, the disclosures Dr. Laneman identifies for written description support, discussed above, are included verbatim in both the '679 patent and the Korean Application. Ex. B (Laneman EDTX Rpt.) at ¶¶ 269-275. For the same reasons discussed above in connection with the '679 patent specification, the disclosure of a "a 16-symbol signature $S_i$" does not provide written description for the index limitation of the claims.

Accordingly, the Asserted Claims are invalid for lack of written description. *See Briggs & Stratton Corp. v. Chongqing Rato Power Co.*, No. 5:13–CV–0316, 2014 WL 4888266, at *18 (N.D.N.Y. Sept. 30, 2014) (dependent claims lack written description where independent claim lack written description).

### B.    There Is No Written Description Support For "A Transceiver Configured To Transmit Or Receive The Uplink Data" In The '679 Patent's Specification Or In Its Priority Applications

Claim 6 of the '679 patent requires "a transceiver configured to transmit or receive the uplink data." This claim is invalid because there is no written description support for "a transceiver configured to . . . *receive the uplink data*." As an initial matter, the parties have agreed that "uplink data" means "data sent or intended to be sent from the mobile terminal to the network." SUF 13. Accordingly, when uplink data is *transmitted*, the transceiver in the mobile terminal sends data to the network; when uplink data is *received*, the transceiver in the mobile terminal receives that data from the network.[6] This conclusion is not only compelled by the Court's construction, it is also

---

[6]   Indeed, as Evolved's expert recognizes, "a transceiver is a device capable of transmitting or receiving data, as it is a combination of the words 'transmitter' and 'receiver.'" Ex. B (Laneman EDTX Rpt.) at ¶ 769.

13

required by the claim language: the "memory" limitation following the "transceiver" limitation specifies that it stores uplink data "transmitted or received via the transceiver or from an external source." Therefore, the memory stores information that, *inter alia*, is either "transmitted via the transceiver" (*i.e.*, it stores that uplink data before it is transmitted by the transceiver) or "received via the transceiver" (*i.e.*, it stores that uplink data after it is received by the transceiver).[7] This relationship between claim limitations—where must the data come from and where must it go—is critical, because it disproves Evolved's strained reading of the claims.

Turning to the specification, there is no description of uplink data being ***received*** by a transceiver in a mobile terminal. Rather, the specification only discloses a mobile terminal that ***transmits*** uplink data to a mobile terminal. SUF 14. There is, put simply, no written description supporting a mobile terminal receiving any uplink data sent over a network. *Id.*

Evolved does not dispute that there is no written description support for a transceiver receiving data—any data, not just "uplink data" as required by the plain language of the claim[8]—over a network. Instead, Evolved contends that the claims do not require the transceiver to receive the uplink data from the network and that the transceiver can receive the uplink data from the memory. Evolved's interpretation of the claims is incorrect for several reasons.

First, Evolved moves the goalposts and rewrites the claim, arguing there is adequate written description because the transceiver receives uplink data ***from the memory***. Ex. B (Laneman EDTX Rpt.) at ¶ 772. Evolved's rationale for this interpretation is that uplink data is never received from

---

[7]   Dr. Laneman in his expert report focuses on the "external source" portion of the memory limitation. *See* Ex. B (Laneman EDTX Rpt.) at ¶ 773. In context, it is clear that this simply distinguishes data sent to/from the transceiver from data from other "external" sources. *See* '679 patent, claim 6. Regardless, it does nothing to resolve the issue with the "transceiver" limitation, which requires a transceiver that both transmits and receives uplink data.

[8]   As noted by Dr. Laneman, a mobile terminal "receives 'downlink data,'" not uplink data. Ex. B (Laneman EDTX Rpt.) at ¶ 770.

14

the network by a transceiver (it transmits uplink data and receives downlink data) so whatever the claim says, it must mean something different. But it is axiomatic that courts cannot rewrite claims to preserve their validity. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002). That prohibition applies equally to written description as it does to other bases of invalidity.

Second, Evolved's interpretation of the claim is undermined by the memory limitation: "a memory configured to store the uplink data transmitted or received via the transceiver or from an external source." In plain English, the memory must store three types of data: (1) uplink data transmitted via the transceiver; (2) uplink data received via the transceiver; (3) uplink data received from an external source. Option (2) disproves Evolved's transceiver argument, because it expressly recites uplink data *received via the transceiver*. This is exactly what the transceiver limitation requires as well—a transceiver receiving uplink data. Thus, whether the focus is on the "transceiver configured to … receive" uplink data or the memory storing uplink data "received via the transceiver" is immaterial—there is no written description support for the concept of a transceiver receiving uplink data over a network.

Third, Evolved's experts improperly attempt to "bootstrap" the knowledge of what would have been obvious to a POSITA to find written description support. Dr. Laneman concludes, based on the agreed construction for uplink data and his erroneous interpretation of the claims, that "a POSITA would not come to any conclusion other than that the Inventors were in possession of the invention as claimed." *Id.* at ¶ 774. Mr. Jones—Evolved's infringement expert—echoes this sentiment. In deposition, he testified that the claimed transceiver would be understood by a POSITA as "receiv[ing] the uplink data from a higher level of [] some other stack within the mobile terminal, and then [] the transceiver transmits the uplink data over the air to the target base station." Ex. G (Jones ITC Tr.) at 65:5-66:15. Neither experts' testimony helps Evolved's case, however,

15

because both plainly expose Evolved's strategy: instead of identifying written description support, Evolved seeks to improperly "bootstrap" the knowledge of what would have been obvious to a POSITA to fill the gap for this disclosure.  Ex. B (Laneman EDTX Rpt.) at ¶ 774; Ex. G (Jones ITC Tr.) at 65:5-66:15; *Rivera*, 857 F.3d at 1322; *Transperfect*, 703 F. App'x at 963; *see also* Ex. C (Laneman ITC Tr.) at 199:3-200:5 (agreeing that the actual reception of the uplink data by the transceiver in the device from some other component is not disclosed in the patent but "would be known to someone of skill in the art").

The specification of the '679 patent does not even mention a "transceiver" much less a transceiver that receives uplink data from "a higher level of [] some other stack within the mobile terminal." SUF 14.  And for the reasons discussed above, there is no express or inherent disclosure—and therefore inadequate written description—for a transceiver configured to receive uplink data, as required by the claims.  Evolved's experts have admitted as much.  Indeed, Evolved's experts apparently concede that it would make no sense for a transceiver to "receive uplink data," as expressly recited in the claims.  Ex. B (Laneman EDTX Rpt.) at ¶ 770.  If a transceiver would never receive uplink data over a network, there can be no written description support for the claims.

Accordingly, claim 6 is invalid for lack of written description.  *See Briggs*, 2014 WL 4888266, at *18.

## V.   CONCLUSION

For these reasons, Samsung respectfully asks that the Court grant summary judgment in its favor and find that claims 1, 3, 6, and 8 of the '679 patent are invalid for lack of written description.

16

███████████████████████████████████████

Dated:  July 10, 2023

Respectfully submitted,

*/s/ Melissa R. Smith*
Kevin P.B. Johnson
California Bar No. 177129 (admitted in ED TX)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis
California Bar No. 202603 (admitted in ED TX)
victoriamaroulis@quinnemanuel.com
Todd Briggs
California Bar No. 209282
toddbriggs@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650.801.5000
Fax: 650.801.5100

Kevin Hardy
D.C. Bar No. 473941 (admitted in ED TX)
kevinhardy@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
Fax: 202.538.8100

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

17

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 10, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: July 10, 2023                    */s/ Melissa R. Smith*
                                        Melissa R. Smith

18