# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| EVOLVED WIRELESS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>    Defendants. | Civil Action No. 2-21-cv-00033<br><br><br>**Jury Trial Demanded** |

## SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF LICENSE AND EXHAUSTION

## **TABLE OF CONTENTS**

**Page**

I. STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ...................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................2

III. LEGAL STANDARD...........................................................................................................6

IV. ARGUMENT........................................................................................................................7

    A. Section 5.3 of the 2004 Amendment Granted Qualcomm and Its Customers a Life-of-Patent License for Any Patents LGE Sold or Transferred ..........................7

    B. The License Section 5.3 Granted Survived The License Agreement's Termination..................................................................................................................11

V. CONCLUSION...................................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Alameda Investments, LLC*,
   686 F. App'x 428 (9th Cir. 2017) ...............................................................................11, 12

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................................6, 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................................................7

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998) ............................................................................................11

*Dabney-Johnston Oil Corp. v. Walden*,
   4 Cal.2d 637, 52 P.2d 237 (1935) ....................................................................................12

*Datatreasury Corp. v. Wells Fargo & Co.*,
   522 F.3d 1368 (Fed. Cir. 2008) ........................................................................................10

*Epistar Corp. v. Int'l Trade Comm'n*,
   566 F.3d 1321 (Fed. Cir. 2009) ........................................................................................10

*Evolved Wireless, LLC v. HTC Corp.*,
   840 Fed. Appx. 586 (Fed. Cir. 2021) .................................................................................5

*Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*,
   Case No. 15-545 – SLR (D. Del. June 25, 2015) ...........................................................4, 5

*Innovus Prime, LLC v. Panasonic Corp.*,
   No. C-12-00660-RMW, 2013 WL 3354390 (N.D. Cal. July 2, 2013) .............................10

*Kitty-Anne Music Co. v. Swan*,
   112 Cal. App. 4th 30 (2003) ..............................................................................................7

*Layne Christensen Co. v. Bro-Tech Corp.*,
   836 F. Supp. 2d 1203 (D. Kan. 2011) .........................................................................12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...........................................................................................................7

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   247 F.3d 44 (3d Cir. 2001) ...............................................................................................10

*Pace v. Bogalusa City Sch. Bd.*,
  403 F.3d 272 (5th Cir. 2005) (*en banc*) ...................................................................9

*Parsons v. Bristol Dev. Co.*,
  62 Cal. 2d 861 (1965) ...............................................................................................7

*Matter of Provider Meds, L.L.C.*,
  907 F.3d 845 (5th Cir. 2018) .................................................................................8, 9

*Scramoge Tech. Ltd. v. Apple, Inc.*,
  2023 WL 3168322 (N.D. Cal. Apr. 17, 2023) ..........................................................8

*Toshiba Corp., v. Imation Corp.*,
  681 F.3d 1358 (Fed. Cir. 2012)..................................................................................6

*Transcore, LP v. Electronic Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2008)................................................................................10

**Statutes**

Cal. Civ. Code § 1641..............................................................................................12

**Rules**

Fed. R. Civ. P. 56.....................................................................................................6

**Other Authorities**

Miksche, Marlo T. and Roth, Steven W. (2014) "A Balanced Approach to Patent Utilization," Cybaris®: Vol. 5: Iss. 1 , Article 6 at 113. Available at: https://open.mitchellhamline.edu/cybaris/vol5/iss1/6.............................................8

This motion concerns a license agreement between LG Electronics Inc. ("LGE") and Qualcomm Inc. ("Qualcomm"), entered in 1993 and amended several times thereafter. The District of Delaware and the Federal Circuit have already held that this specific license agreement exhausts Evolved's rights to sue Samsung for infringement of a patent in the same family as the asserted patent here (which Evolved acquired from LGE) as to any accused products containing Qualcomm chipsets. It is undisputed that, if the covenants provided in that license agreement are still in effect, Samsung products with Qualcomm chipsets remain licensed and thus do not infringe the asserted patent. Under the plain language of the license, those covenants remain in force. The agreement states that LGE may not "sell, assign, or otherwise transfer any patent which is subject to the covenants granted in this Section 5 or the licenses granted in the License Agreement to any third party unless such patent remains subject to the covenants granted in Sections 5.1 and 5.2 above [which granted covenants not to sue to Qualcomm and its customers] or the licenses in the License Agreement, as the case may be, *for the life of such patent*." That provision is clear on its face: LGE agreed that if it ever transferred any patents covered under the license agreement, including the asserted patent, then that transfer would be conditioned on Qualcomm and its customers (including Samsung) remaining licensed to such patents, including the asserted patent, for the life of the patent. Both common sense and other contract provisions confirm that the life-of-patent license Section 5.3 granted to any transferred patents (including the asserted patent) was meant to survive the agreement's subsequent termination at the end of 2018.

Thus, Samsung respectfully asks that the Court enter partial summary judgment that accused products with Qualcomm chipsets do not infringe under the doctrines of license and exhaustion.

## I.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1. Whether partial summary judgment should be granted in Samsung's favor on the issue of license and exhaustion based on the license agreement between Qualcomm and LGE.

1

**II.    STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On August 31, 1993, Qualcomm entered into a license agreement with Goldstar Information & Communications Ltd., LGE's corporate predecessor. Ex. A at QCEVOLVEDSS00033_0003629.

2. The agreement was amended in at least 1998, 2004, 2007, and 2010. Exs. B-F.

3. Under the license agreement (as amended), LGE covenanted "not to Assert any of [LGE's] Intellectual Property against [] QUALCOMM or its Affiliates for making, having made, using, importing, leasing, selling, or otherwise disposing of Components (including but not limited to associated software)." Ex. E at § 5.1 (QCEVOLVEDSS00033_0003735).

4. LGE also covenanted "not to Assert any of [LGE's] Limited Intellectual Property against [] a QUALCOMM Customer or its Affiliates … for making, having made, using, importing, leasing, selling, or otherwise disposing of Covenant Products where the alleged basis for infringement arises from the use or incorporation of QUALCOMM Components (including but not limited to associated software) in such Covenant Products … ." *Id.* at § 5.2.

5. "[LGE]'s Limited Intellectual Property" was defined to mean "[LGE's] Intellectual Property" with exceptions not applicable here. Ex. D at § 5.1 (QCEVOLVEDSS00033_0003673).

6. "[LGE's] Intellectual Property" was defined to include "[LGE's] Commercially Necessary IPR" and "[LGE's] Technically Necessary IPR." Ex. A at QCEVOLVEDSS00033_0003632.

7. "Technically Necessary IPR" was defined to include "[LGE's] (and its Affiliate's) patents … which are technically necessary to use, make, and/or sell Subscriber Units." *Id.* at QCEVOLVEDSS00033_0003633.

8. "Commercially Necessary IPR" was defined to include "[LGE's] (and its Affiliate's) patents … which are commercially necessary to use, make, and/or sell Subscriber Units." *Id.* at QCEVOLVEDSS00033_0003632.

9. A "Subscriber Unit" was defined as "a Complete CDMA Telephone or a CDMA Modem Card, *and any subsequent generation products*." Ex. D at QCEVOLVEDSS00033_0003667 (emphasis added). The phrase "any subsequent generation products" was added in a 2004 amendment to the agreement. *Id.*

10. The agreement defined "Complete CDMA Telephone" as "any complete CDMA (*including multi-mode*) terminal … which (i) incorporates all or any part of the QUALCOMM Intellectual Property and (ii) can be used, without any additional equipment or components being attached thereto, to initiate and/or receive Wireless communications." Ex. F QCEVOLVEDSS00033_0003681 (emphasis added). The phrase "including multi-mode" was added in a 2010 amendment to the agreement. *Id.*

11. The agreement defined "Wireless" to "include[], without limitation, (i) any CDMA-based wireless wide area standard …; and (ii) any updates or revisions to any of the foregoing." *Id.* at QCEVOLVEDSS00033_0003684. The "without limitation" and "any updates or revisions" phrases were added in a 2010 amendment to the agreement (*id.*); the agreement had previously defined "Wireless" to cover "only CDMA-based" systems. Ex. A at QCEVOLVEDSS00033_0003636.

12. Section 5.3 of the 2004 amendment to the license agreement, titled "Transfer of Patents," provided that "[n]either party nor any of their affiliates may sell, assign, or otherwise transfer any patent which is subject to the covenants granted in this Section 5 or the licenses granted in the License Agreement to any third party unless such patent remains subject to the covenants

3

granted in Sections 5.1 and 5.2 above or the licenses in the License Agreement, as the case may be, for the life of such patent." Ex. D at QCEVOLVEDSS00033_0003674.

13. Section 5.3 of the 2004 amendment was never cancelled, superseded, or amended.

14. Section 10.3 of the 2004 amendment provides that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D at QCEVOLVEDSS00033_0003677.

15. Section 17.2 of the 2010 amendment provides that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. F at QCEVOLVEDSS00033_0003693.

16. On January 24, 2014, Evolved's predecessor in interest, TQ Lambda, bought certain patents (including U.S. Patent No. RE46,679, the asserted patent here) from LGE and transferred them to Evolved shortly thereafter. Exs. G and H.

17. In June 2015, Evolved sued Samsung and other smartphone manufacturers in the District of Delaware for alleged infringement of five of the patents it acquired from LGE, including U.S. Patent No. 7,809,373. *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, Case No. 15-545 - SLR, Dkt. 1 (D. Del. June 25, 2015).

18. The Delaware court granted Samsung's motion for summary judgment on Evolved's claim of infringement of the '373 patent as to Samsung products with Qualcomm chipsets based on

4

license and exhaustion stemming from the LGE-Qualcomm agreement, as amended, because Samsung is a customer of Qualcomm for those products. *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, Case No. 15-545-JRB-SRF, Dkt. 482 at 30-31 (D. Del. Dec. 4, 2019).

19. The Federal Circuit largely affirmed, holding that the accused LTE-compliant devices containing Qualcomm chips were "Subscriber Units" within the meaning of the license agreement. *Evolved Wireless, LLC v. HTC Corp.*, 840 Fed. Appx. 586, 592 (Fed. Cir. 2021). The Federal Circuit rejected Evolved's argument that the license agreement applied only to 3G CDMA products and held that the license agreement defined a Subscriber Unit to include "any subsequent generation products" and that 4G/LTE is the subsequent generation to 3G. *Id.* at 591. The Federal Circuit's ruling was also supported by the fact that the license agreement covered "multi-mode CDMA devices" and the accused devices were capable of operating in multiple modes (3G, 4G, etc.). *Id.* at 592.

20. In sum, the Federal Circuit concluded that "[t]he license agreement … precludes infringement for the period that it was in effect." *Id.*

21. The Federal Circuit remanded with instructions to the district court to consider Evolved's argument that LGE had terminated the license agreement effective December 31, 2018, and if the agreement was terminated, "the effect on the license and Evolved's claims of infringement for the post-termination period." *Id.* at 594.

22. Instead of litigating the issue on remand and pursuing damages for the post-termination period, Evolved dismissed the case with prejudice and granted Samsung a royalty-free covenant not to sue on the '373 patent. *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, Case No. 15-545-JRB - SRF, Dkt. 498-1 (D. Del. Apr. 13, 2021). Thus, the issue of the effect (if any) of the termination on the covenants granted in the LGE-Qualcomm license has never been litigated.

5

███████████████████████████████████

23. Because the '679 patent asserted in this case is in the same family, and claims priority to the same application, as the '373 patent, the '679 patent is also covered by the LGE-Qualcomm license. Exs. I ('679 patent) and J ('373 patent).

24. Following the Delaware court's summary judgment ruling, Evolved ███████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███

25. As a result, E████████████████████████████████████████████████
███. Ex. K (EW_ITC-0696631). ████████████████████████████

█ ███████████████████████████████████████████████████████████
███████████████████████

█ ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████

█ ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
██████

█ ███████████████████████████████████

26. When Evolved ████████████████████ it (1) knew that the Delaware court had found that the LGE-Qualcomm license gave rise to exhaustion as to a patent in the same family Evolved is asserting now and (2) had seen Section 5.3 of the 2004 amendment.

## III. LEGAL STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Toshiba Corp., v. Imation Corp.,* 681 F.3d 1358, 1361 (Fed. Cir. 2012) (citing FED. R. CIV. P. 56 and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). When the non-

6

movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986); *Anderson*, 477 U.S. at 257. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

IV.  **ARGUMENT**

    A.  **Section 5.3 of the 2004 Amendment Granted Qualcomm and Its Customers a Life-of-Patent License for Any Patents LGE Sold or Transferred**

It is now settled law that the LGE-Qualcomm license agreement, as amended, provided Qualcomm and its customers with the right to practice the asserted patent's family. SUF ¶¶ 1-11, 17-23. The only remaining question is what effect, if any, LGE's termination of the license had on that right. That is a question of contract interpretation and thus a question of law. *Kitty-Anne Music Co. v. Swan*, 112 Cal. App. 4th 30, 37 (2003) (citing *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965)).[1] It is undisputed that Section 5.3 of the 2004 amendment to the license agreement provided that "[n]either party nor any of their affiliates may sell, assign, or otherwise transfer any patent which is subject to the covenants granted in this Section 5 or the licenses granted in the License Agreement to any third party unless such patent remains subject to the covenants granted in Sections 5.1 and 5.2 above or the licenses in the License Agreement, as the case may be, for the life of such patent." SUF ¶ 12. The "life of such patent" language is critical. As to any patents LGE did ***not*** transfer before terminating the license agreement, Qualcomm's and its customers' license

---

[1] California law governs the LGE-Qualcomm license agreement. Ex. A at § 25 (QCEVOLVEDSS00033_0003656).

terminated along with the underlying agreement. If the agreement did not include Section 5.3 and its "life of such patent" language, then the same would be true for patents LGE *did* sell or transfer. But the parties' choice to include Section 5.3 in the 2004 amendment means that the situation is different for patents, like the asserted patent, that LGE transferred before terminating the license. As to those patents, Qualcomm's and its customers' license would *not* terminate with the underlying agreement, but would instead survive "for the life of such patent." The "life of such patent" clause could not mean anything else—and as discussed below, Evolved does not try to make it mean anything else, instead simply seeking to read it out of the agreement. The only conclusion is that Section 5.3 means what it says: upon sale or transfer of any of the patents covered by the LGE-Qualcomm license, Qualcomm and its customers' license to those patents became a life-of-patent license.

Such a "springing license"—in which license rights "spring" into existence on the occurrence of some defined future event—is known in the industry, and the sale or transfer of a patent is a common future event that triggers springing license rights. *See, e.g., Scramoge Tech. Ltd. v. Apple, Inc.*, 2023 WL 3168322, at *1 (N.D. Cal. Apr. 17, 2023).[2] And the Fifth Circuit (applying Texas law) has found that a license is "perpetual—and therefore not revocable at will—if it offers a definite endpoint for the party's obligation" and that "indexing the License Agreement to the duration of the patent generate[s] a definite endpoint." *Matter of Provider Meds, L.L.C.,* 907 F.3d 845, 856 n.48 (5th Cir. 2018). There is no reason why applying California law here instead of Texas law should lead to a different result. Thus, as of January 24, 2014 (the date LGE transferred the patents to TQ Lambda, SUF ¶ 16), Qualcomm and its customers (including Samsung) gained a life-of-patent license that LGE could not revoke at will. That life-of-patent license is still in force today.

---

[2] *See also* Miksche, Marlo T. and Roth, Steven W. (2014) "A Balanced Approach to Patent Utilization," Cybaris®: Vol. 5: Iss. 1 , Article 6 at 113. Available at: https://open.mitchellhamline.edu/cybaris/vol5/iss1/6

8

Evolved cannot dispute that Section 5.3 says what it says: that upon LGE's transfer of any of the patents subject to the LGE-Qualcomm license agreement, those patents remained subject to the covenants granted in that agreement for the life of the patent. SUF ¶ 12. Nor can Evolved deny that the asserted patent is subject to the LGE-Qualcomm license[3] (SUF ¶ 23) or that LGE transferred the asserted patent to Evolved's predecessor-in-interest. SUF ¶ 16. Thus, LGE agreed at the time of the 2004 amendment that, upon transfer of any covered patent (including the asserted patent), the license agreement would be modified as to the transferred patents such that Qualcomm and Samsung (as Qualcomm's customer) remained licensed to the asserted patent for the life of the patent. Because LGE sold the asserted patent (*id.*), it unavoidably follows that Qualcomm and Samsung remained licensed to the asserted patent for the life of the patent, and therefore that Evolved's rights are exhausted as to all accused products with Qualcomm chips.

Evolved's sole attempt to avoid this result only demonstrates that Samsung's reading of Section 5.3 is correct. Samsung served an interrogatory asking Evolved to explain in detail the basis for its contention that the covenants LGE granted to Qualcomm and its customers terminated as of December 31, 2018, and specifically its basis for contending that Section 5.3 does ***not*** create an irrevocable license for the life of any sold or transferred patents. Evolved's response, in its entirety (minus objections), is below:



---

[3]   Evolved is collaterally estopped from challenging the Federal Circuit's ruling that the asserted patent family is subject to the license because that issue was "(1) … previously adjudicated; (2) … actually litigated; and (3) … necessary to the [Federal Circuit's] decision." *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (*en banc*).

9



Ex. M at 2-3(emphasis added).

That is specious. If Evolved's read were right—if Section 5.3 did nothing but ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—then Section 5.3 did nothing at all. It is black-letter law that, because "one cannot convey what one does not own" (*Transcore, LP v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2008)), an assignee of a patent "takes [the] patent subject to the legal encumbrances thereon." *Innovus Prime, LLC v. Panasonic Corp.*, No. C-12-00660-RMW, 2013 WL 3354390, at *5 (N.D. Cal. July 2, 2013) (citing *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008). *See also Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001) (assignment results in the assignee "stepping into the [assignor's] shoes with regard to the rights that the assignor held and not in an expansion of those rights"); *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1333 (Fed. Cir. 2009) ("Black letter contract law states that the assignment of a contract to an assignee ... only changes the obligated party, not the scope of the obligation."). As a result, any patent LGE sold or transferred would have remained subject to the LGE-Qualcomm license with or without Section 5.3.

Thus, the work Evolved claims Section 5.3 did—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—was already done by operation of law. And Evolved does not try to explain what work Section 5.3's "for the life of such patent" language could be doing under Evolved's reading of that section. Evolved thus ignores both the plain language of the contract and the well-settled principle that "[c]ourts must interpret contractual language in a

10

manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative, or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998); *see also In re Alameda Investments, LLC*, 686 F. App'x 428, 430 (9th Cir. 2017) (similar). That principle applies with even greater force here because the parties added Section 5.3, including the "life of such patent" clause, as part of an *amendment* to the license agreement. Parties do not amend contracts for no reason, but Evolved's theory depends on the assumption that LGE and Qualcomm did just that. It bears repeating that this is Evolved's *only* explanation for its contention that Qualcomm and its customers are no longer licensed to practice the asserted patent, and it both renders Section 5.3 superfluous and completely ignores the express "for the life of such patent" language in the amendment. Evolved's inability to come up with a credible theory only further demonstrates that Samsung's reading of Section 5.3 is the right one.

### B. The License Section 5.3 Granted Survived The License Agreement's Termination

Evolved may argue that, while Section 5.3 indeed says what it says, the license it created did not survive the termination of the Qualcomm-LGE license agreement. That is a convoluted and illogical reading of Section 5.3. As an initial matter, it ignores the plain language of that section, which provided that the license it granted would survive "for the life of such patent." SUF ¶ 12. As explained above, Evolved has not even tried to explain what work that phrase could be doing if the license Section 5.3 granted would last only as long as the underlying agreement. It would also be odd if LGE's termination of a license agreement impacted the license status of patents LGE no longer owned. According to the agreement's plain language, Section 5.3 simply means what it says: upon sale or transfer of any of the covered patents, Qualcomm and its customers would remain protected by the covenants granted in the license agreement "for the life of such patent." *Id.*

11

███████████████████████████████████████████

Samsung's reading is also consistent with other provisions in the license agreement, as amended. Under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Section 10.3 of the 2004 amendment (the same amendment that includes Section 5.3) provides that ████████████████████████████

████████████████████████████████████████████

██████████████████████████████ SUF ¶ 14 (emphasis added). Thus, the parties expressly contemplated that █████████████████████

████████████████████████████████████████████

████████████████ Under California law, where a contract makes clear (even impliedly) that █ ████████████████████████ that provision does so absent express agreement otherwise. *Dabney-Johnston Oil Corp. v. Walden*, 4 Cal.2d 637, 52 P.2d 237, 245 (1935) (noting that a provision that applied to "any subsequent lease" survived after the termination of the existing lease contract); *see also Layne Christensen Co. v. Bro-Tech Corp.*, 836 F. Supp. 2d 1203, 1230 (D. Kan. 2011) (applying Delaware law and noting that a provision that applied "during the [contract] Term and thereafter" survived termination because the parties plainly contracted for the provision to be applicable after the agreement ceased to be in force). The same logic applies here: by indexing the license granted in Section 5.3 to the life of the transferred patent, LGE and Qualcomm contemplated that those licenses might remain in effect even if the underlying agreement were terminated. ██████ ████████████████████████████████████████ confirms this plain reading of the agreement.

That makes perfect sense. What Qualcomm got out of the license agreement was peace: the freedom for itself and customers using its components to practice certain commercially and

12

technically necessary patents without fear of suit. If LGE could strip that freedom simply by transferring some of the covered patents and/or terminating the agreement, Qualcomm would lose much of what it bargained for. And while Section 10.3 refers to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, here that is a distinction without a difference. It is undisputed that Section 5.3 was never canceled, amended, or superseded. SUF ¶ 13. As a result, it remained in effect when the agreement as a whole was terminated, and the 2004 amendment was terminated only by termination of the agreement as a whole. Section 10.3 thus further supports the view that the grant of rights in Section 5.3 was intended to survive termination.

Thus, the agreement's plain language, common sense, and other provisions in the contract uniformly point to the same conclusion: Section 5.3 guaranteed that Qualcomm and Samsung remain licensed to the asserted patent for the life of the patent.

Evolved knew this risk existed and consciously chose to bear it. Evolved knew about the LGE-Qualcomm agreement, including Section 5.3, in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶ 26. Indeed, by that date, Evolved both knew that the Delaware court had held that the LGE-Qualcomm agreement exhausted Evolved's rights as to a patent in the same family as the patent Evolved now asserts, and had at least seen Section 5.3 of the 2004 amendment. *Id.* With that full knowledge, Evolved agreed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SUF ¶ 25. Evolved knew all relevant facts about the LGE-Qualcomm agreement and agreed to turn the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Evolved got what it bargained for in that deal: ▮

13

███████████████████████████████████████████

███████████████████████████████████████ *Id.* In exchange, Evolved ███████████████████████████████████████████. Evolved ran away from its ITC case on the eve of trial, willingly forfeiting ████████████████████ ████████, and is now stuck asserting a patent to which Samsung is and has always been licensed, and with no recourse ███████████████████████████████. If Evolved finds that predicament unfair, it has only itself to blame.

## V. CONCLUSION

For these reasons, Samsung respectfully asks that the Court enter partial summary judgment that accused products with Qualcomm chipsets due not infringe under the doctrines of license and exhaustion.

| | |
|---|---|
| Dated: July 10, 2023 | Respectfully submitted, |

*/s/ Melissa R. Smith*
Kevin P.B. Johnson
California Bar No. 177129 (admitted in ED TX)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis
California Bar No. 202603 (admitted in ED TX)
victoriamaroulis@quinnemanuel.com
Todd Briggs
California Bar No. 209282
toddbriggs@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel: 650.801.5000
Fax: 650.801.5100

Kevin Hardy
D.C. Bar No. 473941 (admitted in ED TX)
kevinhardy@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
Fax: 202.538.8100

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on July 10, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: July 10, 2023        */s/ Melissa R. Smith*
                            Melissa R. Smith

16